UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>LEONARD R. BARR,<br><br>　　　　　　　　　Defendant. | Case No.　21-cv-11831<br><br>HON. |

# COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC"), for its Complaint against Defendant Leonard R. Barr, alleges as follows:

## SUMMARY OF THE ACTION

1.　This case involves multiple acts of insider trading conducted by Leonard R. Barr, a "Unit Controller" formerly employed at Domino's Pizza, Inc. ("Domino's" or the "Company"). Barr misused confidential, material, non-public financial information, entrusted with him by Domino's, for his personal gain. After reviewing draft Forms 10-Q and 10-K prior to the public release of that information in 2016 and 2020, Barr traded Domino's securities on the basis of the

material non-public information in those documents.  In total, Barr profited by $34,180.00 from his illegal trades.

2. Through his actions, Barr violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j (b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and, unless restrained and enjoined, will continue to violate the federal securities laws.

## JURISDICTION AND VENUE

3. The SEC brings this action pursuant to Sections 21(d), 21(e), and 21A of the Exchange Act [15 U.S.C. § 78u(d), 78u(e), and 78u-1].

4. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. 78u(d), 78u(e), 78u-1, and §78aa].

5. Barr, directly or indirectly, made use of the means or instrumentality of transportation or communication in interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged herein.

6. Venue is proper in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, courses of business, and transactions constituting the violations alleged herein occurred within the Eastern District of Michigan, including Barr accessing material non-

public information belonging to his employer and submitting trades in his brokerage account.

## DEFENDANT

7.  **Leonard R. Barr** ("Barr") is 50 years old and resides in Dexter, Michigan.  Barr worked as an accountant at Domino's from 1996 to 2020 and held the position of Unit Controller from at least 2016 to 2020.  Barr was responsible for accruals and confirming the accuracy of accounts that ultimately fed into higher-level financial results for the Company.  Barr was separated from Domino's in July of 2020.

## OTHER RELEVANT ENTITY

8.  **Domino's Pizza, Inc.** ("Domino's" or the "Company") was at all relevant times, and currently is, a publicly-traded company incorporated in Delaware and headquartered in Ann Arbor, Michigan.  At all relevant times, Domino's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and was quoted on the New York Stock Exchange under the ticker symbol "DPZ."

# FACTS

**A.      Barr Had Access to the Company's Confidential Earnings Information.**

9.      From at least October 2016 through February 2020, Barr prepared, accessed, and reviewed confidential data related to the financial performance of Domino's as part of his work as Unit Controller.

10.     Following the end of each of the Company's fiscal quarters, the Company's Legal Department sent Barr, and select others at the Company, draft versions of the Company's Form 10-Q or Form 10-K before the information contained in these forms was made available to the public in quarterly and year-end earnings announcements and the forms were filed with the SEC. These draft documents contained financial information about the Company's financial performance from the prior quarter and/or year such as revenues and operating expenses.

11.     As a Unit Controller of Domino's, Barr was required to provide a sub-certification of certain financial data that was used in preparing the Company's public earnings announcements and Forms 10-Q and 10-K. In his sub-certification, Barr attested to the veracity and completeness of the data that his group prepared. Domino's required Barr, certain other managers, and certain others at the Company to certify financial information generated by their group in order to enable the Company's Chief Executive Officer and Chief Financial

Officer to certify the overall financial reports disclosed to the public and submitted to the SEC.

12. All of the above financial information provided to Barr prior to release to the public contained material non-public information, and Domino's considered the information confidential, material, and non-public and treated it accordingly.

**B.     Barr Was Obligated to Maintain Confidentiality and to Refrain from Trading Domino's Securities Based on Insider Information.**

13. Domino's maintained a Code of Ethics, which directed employees to "maintain the confidentiality of information entrusted to them by the Company" and prohibited "employees from trading . . . in securities on the basis of material non-public information."

14. Domino's also maintained an Insider Trading Policy, which informed employees that "Federal and state securities laws prohibit the purchase or sale of a company's securities by persons who are aware of material information about that company that is not generally known or available to the public" and directed employees such as Barr that they "may not trade in the securities of the Company . . . if [they] are aware of material nonpublic information relating to the Company."

15. Both the Code of Ethics and the Insider Trading Policy applied to Barr.

16. Included with the limited distribution of draft financial results from the Company's Legal Department, which Barr received, was the admonishment, "Please remember the draft 10-Q [or 10-K] is a confidential document and should be treated as such."

### C. Barr Traded Ahead of the Company's 3rd Quarter 2016 Earnings Announcement.

17. On October 4, 2016, Barr received an email from the Company's Legal Department that attached a draft of the Company's Form 10-Q containing financial results for the Company's 3rd quarter of 2016. The email advised Barr, "Please remember the draft 10-Q is a confidential document and should be treated as such."

18. On October 5, 2016, Barr purchased Domino's call options. Call options are financial contracts that give the option buyer the right, but not the obligation, to buy a stock, bond, commodity or other asset or instrument at a specified price within a specific time period. The call options purchased by Barr were "out-of-the-money," meaning that the price of Domino's stock would have to rise in order for Barr to profit from the exercise of these options. Additionally, the call options purchased by Barr were set to expire on October, 21, 2016, just three days after Domino's was scheduled to announce its 3rd quarter 2016 earnings results contained in the Form 10-Q, of which Barr had received a draft.

19. On October 18, 2016, Domino's issued a press release and held a conference call announcing its financial results for the 3rd quarter of 2016. The Company's earnings per share exceeded analysts' consensus expectations by $0.07 per share. Following the earnings announcement, Domino's stock closed at $159.45 per share, an increase of $7.44 over the prior day's close.

20. On October 18, 2016, Barr sold his call options for a profit of $1,300.00.

**D.   Barr Traded Ahead of the Company's 4th Quarter and Fiscal Year 2020 Earnings Announcement.**

21. On February 4, 2020, Barr received an email from the Company's Legal Department with a draft of the Company's Form 10-K attached containing financial information for the 4th quarter of 2020 and the fiscal year 2020. The email advised Barr, "Please remember the draft 10-K is a confidential document and should be treated as such."

22. On February 4, 2020, Barr purchased Domino's call options. The call options purchased by Barr were again "out-of-the-money" and set to expire on February, 21, 2016, just one day after Domino's was scheduled to announce its 4th quarter and fiscal year earnings results contained in the Form 10-K, of which Barr had received a draft.

23. On February 5, 2020, Barr purchased more out-of-the-money Domino's call options, which were also set to expire on February 21, 2016.

24.     On February 19, 2020, Barr sold his Domino's call options for a profit of $19,331.00 and then purchased 200 shares of Domino's stock.

25.     On February 20, 2020, Domino's issued a press release and held a conference call announcing its financial results for the 4th quarter and fiscal year 2020. The Company's earnings per share exceeded analysts' consensus expectations by $0.15 per share. Following the earnings announcement, Domino's stock closed at $373.16 per share, an increase of $76.06 over the prior day's close.

26.     On February 20, 2020, Barr sold 200 shares of Domino's stock for a profit of $13,549.00.

    **E.     Barr Acted with Scienter.**

27.     At the time of his trading described above, Barr knew or was reckless in not knowing that the information regarding the Company's earnings results and financial performance that had been entrusted to him was material non-public information that had not yet been disclosed to the public.

28.     At the time of the trading described above, Barr knew or was reckless in not knowing that he owed Domino's a fiduciary duty, or an obligation arising from a relationship of trust or confidence to keep confidential any material non-public information regarding the Company's quarterly and annual earnings results and financial performance, and to refrain from using this information to place trades for his own benefit.

29.     Barr knowingly or recklessly breached his duty to Domino's by trading in Domino's securities on the basis of that confidential information for his own benefit.

## CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act and Rule 10(b)5 Thereunder**

30.     The SEC realleges and incorporates by reference paragraphs 1 through 29, as though fully set forth herein.

31.     By engaging in the conduct described above, Barr in connection with the purchase or sale of securities, directly or indirectly, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, with scienter:

   a. employed devices, schemes, or artifices to defraud;

   b. made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstance under which they were made, not misleading; and/or

   c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

32. By engaging in the foregoing conduct, Barr violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that this Court:

### I.

Permanently restrain and enjoin Barr from, directly or indirectly, violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

Order Barr to pay civil monetary penalties under Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

### III.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

IV.

Grant such other and further relief as this Court may deem just, equitable, and necessary.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the SEC demands trial by jury in this action of all issues so triable.

Dated:  August 6, 2021

>Respectfully submitted,
>
>**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
>
>/s/ Gregory A. Kasper
>Gregory A. Kasper,  CO Bar No. 46800
>Attorneys for Plaintiff
>U.S. Securities and Exchange Commission
>1961 Stout Street, Suite 1700
>Denver, Colorado  80294
>(303) 844-1026
>KasperG@sec.gov
>
>
>Local Counsel for Plaintiff
>SAIMA S. MOHSIN
>Acting United States Attorney
>
>Peter A. Caplan
>Assistant United States Attorney
>U.S. Attorney's Office – Eastern District of Michigan
>211 West Fort Street, Suite 2001
>Detroit, Michigan  48226
>(313) 226-9784
>(313) 226-3271 (facsimile)
>Peter.Caplan@usdoj.gov